UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Thomas R. Mason

     v.                                  Civil No. 12-cv-507-JL
                                           Opinion No. 2014 DNH 169
Telefunken Semiconductors
America LLC et al.

**MEMORANDUM ORDER**

In this action, the court is tasked with determining whether a contractual provision for severance pay was triggered when the plaintiff's employment was transferred from one company to another. Plaintiff Thomas Mason claims that his former employer, defendant Telefunken Semiconductors America LLC ("TSA") assumed the rights, duties, and obligations of his previous employer, Tejas Silicon Inc., under his employment agreement with Tejas-- including the obligation to pay him one year's severance pay if he was terminated without cause, or two years' pay if he was terminated due to Tejas's "acquisition, merger, or buyout by another entity." At least one of those two scenarios occurred, Mason says, but TSA has yet to pay him the hundreds of thousands of dollars, or grant him the stock options, to which he believes he is entitled.

This court has jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity), because the parties are citizens of different states and the amount in controversy exceeds $75,000. Each party has moved for summary judgment. See Fed. R. Civ. P. 56(a). Mason

argues that the undisputed material facts demonstrate that Tejas terminated him in December 2011 when that company merged into TSA, entitling him to two years' salary in severance pay and his vested stock options, or, at the very least, that TSA later terminated him without cause in mid-2012, entitling him to one year's salary plus stock options.  For its part, TSA asserts that the facts show that neither Tejas nor TSA terminated Mason during the pendency of his Tejas employment agreement, and that his term of employment under the agreement simply came to an end prior to his termination from TSA, entitling him to nothing.  After hearing oral argument and receiving supplemental briefing,[1] the court agrees with TSA that Mason is not entitled to severance pay under the employment agreement, and thus grants its motion for summary judgment (and denies Mason's).

## I.   <u>Applicable legal standard</u>

On cross-motions for summary judgment, the court applies the standard set forth in Federal Rule of Civil Procedure 56(a) to

---

[1]Following oral argument, the court requested supplemental briefing on whether Mason had released his claims against TSA arising out of his departure from Tejas in December 2011 by executing a document claiming to "absolutely and irrevocably and unconditionally release and forever discharge" TSA from "any and all" claims related to the end of his employment with Tejas.  <u>See</u> Order of May 29, 2014.  Ultimately, the court found it unnecessary to resolve that issue, since the grounds advanced in TSA's motion provide a sufficient basis upon which to grant summary judgment in TSA's favor.  This order makes no further mention of that issue.

each party's motion separately.  See, e.g., Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).  That standard provides for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)). A fact is "material" if it could sway the outcome under applicable law.  Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.

## II.  **Background**[2]

The following facts are undisputed and supported by record evidence.  In March 2009, Mason accepted a position as Director

---

[2]The court's preparation of this background summary (and, indeed, its consideration of the motions in general) was frustrated by Mason's insistence on using the sections of his memoranda dedicated to "a short and concise statement of material facts," see L.R. 56.1(a) & (b), to make substantive arguments. As this court recently had occasion to note, this practice "is improper and violates the Local Rules." Galvin v. EMC Mortg. Corp., 2014 DNH 139, 8 n.4.  Counsel are advised, as were the attorneys in that case, "that in the future, they should attempt to keep their argument where it belongs:  in the argument section of their briefs." Id.

of Product Development with Tejas pursuant to a letter agreement
(the "Employment Agreement").  The Employment Agreement, which
stated that it would be governed by California law, recited an
effective date of April 1, 2009.  It further provided that
Mason's employment with Tejas would last "for a period commencing
on the Effective Date and ending on the first anniversary of the
Effective Date" (i.e., on April 1, 2010), but would "be extended
automatically for additional one-year periods upon each
anniversary of the Effective Date unless written notice that [the
Employment Agreement] will not be extended is given by either
party to the other at least thirty (30) days prior to the
applicable anniversary of the Effective Date."  And, as is
particularly relevant to the present dispute, Section 6(b) of the
Employment Agreement contained the following provisions:

> If your employment with [Tejas] is <u>terminated without
> Cause</u>, then you will be entitled to continue to receive
> your base salary, payable on a salary continuation
> basis following your termination of employment, for the
> period of twelve (12) months. . . .

> If your employment with [Tejas] is <u>terminated without
> Cause due to the acquisition, merger, or buyout by
> another entity</u>, then you will be entitled to continue
> to receive your base salary, payable on a salary
> continuation basis following your termination of
> employment, for a period of two (2) years.[3]

---

[3]It scarcely need be said, but "you" in these provisions
referred to Mason.  Section 6(b) also provided for continuation
of Mason's life insurance and health care coverage in the event
of his termination, along with the payment of any earned but
unused vacation time and the vesting of stock options.

4

(Emphasis added.)  Neither Mason nor Tejas exercised the non-renewal provision of the Employment Agreement during the first two years of Mason's employment, and the Employment Agreement thus renewed automatically on April 1, 2010, and again on April 1, 2011.

In early December 2011, the president of Tejas approached Mason, who by that time had been promoted to the position of Senior Director of Product Development, and informed him of Tejas's plans to merge with TSA.  Shortly thereafter, TSA sent Mason a letter offering him employment in the same position at TSA, at the same salary, beginning on January 1, 2012.  The offer letter provided that Mason's employment at TSA would be "for no specified period of time," and would be "an at-will employment relationship" in which either Mason or TSA could "terminate the relationship at any time, for any reason, with or without cause." Later that month, Mason executed the letter, attesting to his understanding "that if I am employed by [TSA], my employment and related compensation may be terminated at any time, with or without cause, and with or without advance notice by me or by [TSA]."  At more or less the same time, Mason also executed an "Employment, Confidential Information and Invention Assignment Agreement" with TSA that declared (in all capital letters) that, "except as set forth in any other written agreement between me and [TSA], my employment with [TSA] constitutes 'at-will'

5

employment" and that the "employment relationship may be terminated at any time, for any reason or for no reason, with or without notice."

Also in December 2011, Mason executed two other documents relevant to his claims in this case.  First, in anticipation of Tejas' and TSA's "corporate consolidation and reorganization," Mason, Tejas, and TSA signed an Amendment to the Employment Agreement.  Under the Amendment, Tejas agreed to "transfer and assign to [TSA] the [Employment] Agreement and all of its rights, duties and obligations thereunder . . . effective as of January 1, 2012," and TSA agreed to "assume and accept" those rights, duties and obligations.  In recognition of that transfer and assignment, the Amendment provided that "[e]ach reference to 'Tejas Silicon, Inc.' in the [Employment] Agreement shall be deleted in its entirety and be replaced by TSA Semiconductors America LLC."  Mason also executed an "Employee Transfer Agreement and General Release" ("Transfer Agreement") acknowledging that his employment would "transfer from Tejas Silicon, Inc. . . . to [TSA] as of January 1, 2012," such that his "employment with [Tejas] will end as of December 31, 2011 . . . and [he] will become an employee of [TSA] effective as of January 1, 2012."

In accordance with the terms of these various agreements, Mason's last day as a Tejas employee was December 31, 2011, and

his employment at TSA--again, in the same position of Senior
Director of Product Development that he had held at Tejas, for
the same salary, and also in the same work location--began the
very next day.  Like Mason, all other Tejas employees became TSA
employees by January 1, 2012.  Mason and the other former Tejas
employees at TSA continued to perform the same work they had been
performing while at Tejas.

In late February 2012, TSA's HR director e-mailed Mason "to
provide [him] written notice that the [Employment Agreement] will
not be extended for an additional one-year period and will
automatically expire April 1, 2012."  The e-mail further informed
Mason of TSA's position that his continued employment at TSA
after that date would "be in accordance with the terms of the
[TSA] offer letter, the Employment, Confidentiality and Invention
Assignment Agreement," and various other documents Mason had
signed upon beginning employment with TSA.

Perplexed by this e-mail, Mason sought clarification from
TSA regarding his employment status in light of the termination
of the Employment Agreement.  By the end of March 2012, TSA still
had not cleared things up for Mason, and he sent TSA an e-mail
stating his position that he was entitled to receive at least a
year's worth of salary and benefits for his termination without
cause under the terms of the Employment Agreement. (Prior to this
e-mail, Mason had not sought severance pay from TSA under the

Employment Agreement.)  TSA responded the very next day,
informing Mason that it had chosen not to renew the Employment
Agreement, but that the non-renewal did "not in any way affect
your offer letter from [TSA] and all other documents that you
entered into with [TSA] as part of the new hire package."  TSA
explained that it would continue to employ Mason pursuant to the
terms of the December 2011 offer letter (which, as already
discussed, created an at-will employment relationship).  And
continue to employ him TSA did--for another month and a half,
until, in mid-May of 2012, it abruptly terminated his employment
as a part of a reduction in force.

    Mason filed this action in a California Superior Court,
seeking recovery for TSA's alleged breach of contract, breach of
the implied covenant of good faith and fair dealing, and
violation of California Labor Code § 203 by failing to pay wages
due and owing (i.e., severance pay and stock options allegedly
due under the Employment Agreement).  TSA removed the case to the
United States District Court for the Northern District of
California and moved that court to transfer the action to this
court, see 28 U.S.C. § 1404(a), which it did.  After conducting
discovery, the parties filed the motions at bar.

III. **Analysis**

As noted at the outset, Mason's claims are premised chiefly on the notion that his employment at Tejas was terminated in December 2011 due to that company's merger with TSA and that, under Section 6(b) of the Employment Agreement, he is therefore entitled to two years' salary and benefits as severance pay. Mason's fallback position is that either TSA's notification of its intent to terminate the Employment Agreement as of April 1, 2012, or its subsequent decision to release him from employment in May 2012, operated as a termination without cause within the meaning of that agreement, such that he is entitled to one year's salary and benefits as severance pay under the same section.

The parties do not dispute that the evaluation of both of Mason's theories turns primarily on the interpretation of the terms of the Employment Agreement and the various other contracts the parties entered into, and that, by virtue of California choice-of-law clauses in each of those contracts, the court should apply the law of that state to this dispute.  Under California law, as is usually the case, "contract interpretation is a legal question for the court."  Legendary Investors Grp. No. 1, LLC v. Niemann, 224 Cal. App. 4th 1407, 1413 (2014).  This court's interpretation of the contracts before it cannot support either of Mason's theories, and thus leads to yet another unfavorable termination for him:  the termination of this case.

9

**A.    Mason's entitlement to two years' salary and benefits as severance pay**

As discussed in Part II, <u>supra</u>, Section 6(b) of the Employment Agreement originally provided for severance pay equal to two years' salary and benefits if Mason's "employment with [Tejas] is terminated without Cause due to the acquisition, merger, or buyout by another entity."  Because he stopped working for Tejas on December 31, 2011, when that company was merged into TSA, Mason says, there can be no question that this section applies, and that TSA, which assumed Tejas's obligations under the Employment Agreement, now must pay him two years' severance pay.  TSA, for its part, disagrees that Mason's separation from Tejas resulted from a merger, or, in fact, that Tejas ever merged into it.  That disagreement is immaterial.  Even assuming that Mason is correct that his employment at Tejas came to an end as a result of that company's merger into TSA, this did not trigger the obligation to pay Mason severance under the Employment Agreement, in light of the parties' execution of the Amendment to that agreement and the Transfer Agreement, and the circumstances under which Mason stopped working for Tejas and began working for TSA.

The Amendment, noting the "corporate consolidation and reorganization" of Tejas and TSA, provided that TSA would assume Tejas's responsibilities under the Employment Agreement "as of

10

January 1, 2012," such that the Employment Agreement would
"remain in full force and effect in accordance with its terms."
The Amendment further provided that the Employment Agreement
would "continue under [Mason's] employment relationship with
[TSA]" and that any reference to Tejas therein would "be deleted
in its entirety and be replaced by TSA."  In so providing, the
parties to the Amendment plainly envisioned that, although Mason
would stop working for Tejas on December 31, 2011, Mason's
employment itself, as created by the Employment Agreement, would
not be "terminated" in the usual sense--i.e., it would not be
"discontinued," Merriam-Webster's Collegiate Dictionary 1289
(11th ed. 2007), or "completely severed," Black's Law Dictionary
1511 (8th ed. 2004).  Rather, in the language of the Amendment,
Mason's employment would "continue," flowing seamlessly from
Tejas to TSA.

    That understanding is reinforced by reference to the
Transfer Agreement, which asserted that Mason's employment would
"transfer from Tejas Silicon Inc. . . . to [TSA] as of January 1,
2012."  The parties' use of the term "transfer," in both the
title and the text, is incompatible with the notion that Mason's
employment was being discontinued or severed; to the contrary, it
suggests that--consistent with the Amendment--Mason's employment
would merely be conveyed from Tejas to TSA.  See Merriam-
Webster's Collegiate Dictionary 1328 (11th ed. 2007) (definition

11

of verb "transfer"); <u>Black's Law Dictionary</u> 1536 (8th ed. 2004)
(same).  And that is precisely what happened: as noted, Mason
continued to hold the very same position at TSA that he had held
at Tejas; to do the very same work for TSA that he had been doing
at Tejas, in the same location; and to earn the very same salary
at TSA that he had been earning at Tejas.[4]

---

[4]The unambiguous language of the various documents signed by
the parties, coupled with these facts, is sufficient to establish
that Mason's entitlement to severance pay under the Employment
Agreement was not triggered when he stopped working for Tejas and
began working for TSA, as his employment was not "terminated" as
envisioned by that agreement.  Even assuming, though, that the
parties' agreements are so ambiguous as to require the court to
resort to extrinsic evidence, <u>see</u>, <u>e.g.</u>, <u>Fireman's Fund Ins. Co.</u>
<u>v. Workers' Comp. App. Bd.</u>, 189 Cal. App. 4th 101, 110-11 (2010),
the result would be the same.  Two pieces of extrinsic evidence
in particular--or, perhaps better said, two pieces of <u>absent</u>
extrinsic evidence--bear noting.  First, although Mason maintains
that the severance provision in the Employment Agreement "was
critical for him in taking the position" with Tejas--so critical
that he specifically negotiated that provision with Tejas prior
to accepting its offer of employment--there is absolutely no
evidence that he ever discussed the severance provision, or his
alleged expectation that TSA would pay him two years' severance,
with TSA at any time prior to beginning work there.  It is simply
implausible that Mason, for whom severance pay was allegedly of
"critical" importance, would fail to raise this issue with TSA if
the Employment Agreement and the Amendment did, as he maintains,
oblige TSA to pay him this severance.  (Indeed, given the alleged
importance of severance pay, the fact that the Amendment itself
made no specific mention of Mason's entitlement to such pay is
itself strong evidence in rebuttal of Mason's position.)  Second,
prior to learning that TSA intended to exercise the non-renewal
provision of the Employment Agreement, Mason never once contacted
TSA to state his position that he was entitled to severance pay,
or to inquire as to why he had not yet begun receiving severance
pay.  That again, is wholly implausible if, as Mason contends,
the Employment Agreement provided for severance payment in these
circumstances.

Mason points to two pieces of evidence in support of his
position that, despite these facts, his employment with Tejas was
"terminated" in December 2011:  the sworn statement of Tejas'
former president, Raj Johal, that all Tejas employees were
"terminated" before being "rehired by" TSA, and an exhibit to the
Transfer Agreement, which lists Mason among the Tejas employees
who were "selected for termination."  Neither statement, however,
is accompanied by any explanation or indication of what the
declarant meant in using the word "terminated" or "termination,"
or by a factual recitation of the end of Mason's employment with
Tejas that contradicts the evidence before the court.  Absent
such content, these pieces of evidence relate nothing more than
conclusions drawn from the facts, rather than facts themselves,
and are thus insufficient to create a genuine issue of material
fact as to whether Mason's employment with Tejas was "terminated"
within the meaning of the Employment Agreement.  See, e.g.,
Livick v. Gillette Co., 524 F.3d 24, 28 (1st Cir. 2008) (summary
judgment affidavit must relate "facts as opposed to conclusions,
assumptions, or surmise").

In sum, the undisputed evidence before the court shows that
Mason's employment with Tejas was not "terminated" within the
meaning of the employment agreement, but transferred to TSA.  As
a result of this transfer, Tejas's obligation to pay Mason two
years' worth of salary and benefits if his employment with that

13

company was "terminated without Cause due to the acquisition,
merger, or buyout by another entity," upon which Mason's claimed
entitlement to that severance is premised, no longer existed.
Rather, per the Amendment, it had immediately been replaced by an
obligation to pay Mason two years' salary and benefits as
severance if his employment with TSA was "terminated without
Cause due to the acquisition, merger, or buyout by another
entity."

　　　Mason observes that if he "had simply been terminated on
December 31, 2011 and not accepted employment with" TSA, "it
would be undisputed he is owed two years severance."[5]  Maybe so.
But, as just discussed, that is not what happened here.  Mason
did accept employment with TSA and, in connection with that
acceptance of employment, agreed to the changes to the Employment
Agreement just discussed.  Because those changes took effect upon
the transfer of Mason's employment from Tejas to TSA, Mason
cannot recover severance pay under Section 6(b)'s clause
governing his termination without cause due to merger.  Put

---

[5]Mason also derides as "absurd and illogical" the idea that
he would agree "to forego twenty-four months of compensation in
exchange for four and a half months of employment."  The court
does not find it at all absurd or illogical that a person would
choose a promise of continued employment, with a mere possibility
of unemployment in the future, over certain unemployment.  It is,
however, arguably absurd and illogical for a business to agree to
pay an employee two years' salary as severance pay while also
continuing to employ that employee and pay his regular salary.

simply, that provision's language provided for the payment of severance if Mason lost his job as a result of his employer's merger with another entity--not if he kept his job despite such a merger.

## B.  Mason's entitlement to one year's salary and benefits as severance pay

Section 6(b) of the Employment Agreement also provided that if Mason's employment with Tejas--and, after it assumed Tejas's obligations under the Agreement, TSA--was terminated "without Cause," Mason would be entitled to severance pay equal to one year's salary and benefits.  Mason contends that when TSA's Director of Human Resources notified him in February 2012 "that the [Employment Agreement] will not be extended for an additional one-year period and will automatically expire April 1, 2012," this constituted a termination "without Cause" within the meaning of Section 6(b), entitling him to severance pay.  The court cannot agree.

As related in Part II, supra, the Employment Agreement provided that Mason's employment would last for a one-year "period commencing on the Effective Date" of April 1, 2009, "and ending on the first anniversary of the Effective Date."  It further provided that the term of employment would

> be extended automatically for additional one-year
> periods upon each anniversary of the Effective Date
> unless written notice that this Agreement will not be
> extended is given by either party to the other at least

15

> thirty (30) days prior to the applicable anniversary of the Effective Date or in accord with, or subject to section 6, Termination.

There is one clear, compelling reason why TSA's notice that, pursuant to this provision, it was not renewing the Employment Agreement cannot be construed as a termination "without Cause." Under Section 6(b) of the Employment Agreement, if TSA wished to terminate Mason's employment without cause, it was required to "provid[e] sixty (60) days written notice" to him.  Yet, under the language of the block quotation above, if TSA decided not to extend the Employment Agreement at the end of the term, it was required to give Mason only 30 days' written notice of that decision.  As Mason points out, this court must, "[t]o the extent practicable," derive the meaning of a contract "from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 71 (2013).  Were the court to interpret the Employment Agreement such that a notice of its non-renewal constituted a termination "without Cause," that would render the provision requiring 30 days' notice meaningless, since TSA would already have been required to give Mason 60 days' notice of the termination pursuant to Section 6(b).

That result must be avoided, and the only apparent way to do so is to exclude non-renewal from the scope of terminations

16

without cause.  Mason does not advance any persuasive argument to

the contrary.[6]  Though this provision is dispositive, it also

bears noting that in the common-law wrongful termination context,

California case law recognizes that "if an employer decides

simply not to exercise an option to renew a contract . . . there

is no termination of employment, but, instead, an expiration of a

fixed-term contract."  Touchstone Television Prods. v. Superior

Ct., 208 Cal. App. 4th 676, 678 (2012).  That is precisely what

happened here.

_____

[6]Mason gamely attempts to reconcile the 60-day notice
requirement for without-cause terminations with the 30-day
requirement for notice of a non-renewal by asserting that only 30
days' notice of a non-renewal is required because the end of a
term represents "a point when both parties understand
negotiations take place," so that "there is less need for as much
notice as there would be if the Agreement was being terminated
mid-contract, when the employee would be less prepared for the
termination."  That may well be true, but all this does is
provide an explanation for why the Employment Agreement includes
a shorter notice period for non-renewals than for terminations
without cause.  It does not explain how a non-renewal can be a
termination without cause when the Agreement unambiguously
requires 60 days' advance notice for the latter but only 30 days'
advance notice for the former.

Mason also contends that the Employment Agreement only
"contemplates three scenarios under which [his] employment would
come to an end," namely, termination with cause, termination
without cause, and resignation.  Because TSA's notice of non-
renewal was neither a termination with cause nor a resignation,
he argues that it must necessarily constitute a termination
without cause.  This is a classic example of circular reasoning:
Mason assumes that a party's decision not to renew the Agreement
at the end of the Agreement's term cannot constitute a fourth,
independent scenario under which his employment could end, and
argues from that premise.  The court declines to join Mason in
his exploration of this logically unsound territory.

17

In an attempt to escape the unfavorable disposition that must inevitably follow, Mason claims that the Amendment to the Employment Agreement changed the Agreement's effective date to January 1, 2012.  Under this theory, TSA could elect not to renew the Employment Agreement, at the earliest, as of January 1, 2013 --the anniversary of the claimed "new" effective date--and its attempts to non-renew the agreement as of the anniversary of the "old," April 1 effective date, and to actually terminate Mason's employment entirely in May 2012, therefore constituted terminations "without Cause."  In support of this view, Mason points to the following language in the Amendment:

- "[T]he Parties desire to amend the [Employment] Agreement as set forth herein such that, <u>effective as of January 1, 2012</u>, all rights of [Mason] under the Agreement are assumed by and transferred to [TSA] and the Agreement shall continue under [Mason's] employment relationship with [TSA]"; and

- "Tejas hereby agrees to transfer and assign to [TSA] the [Employment] Agreement and all of its rights, duties and obligations thereunder.  Such transfer and assignment shall be <u>effective as of January 1, 2012</u>, and in connection therewith, [TSA] hereby agrees to assume and accept, <u>effective as of January 1, 2012</u>, all of Tejas' rights, duties and obligations under the Agreement.  Employee hereby agrees to and acknowledges such transfer and assignment <u>effective as of January 1, 2012</u>."

The emphasized portions, in Mason's telling, changed the effective date in the Employment Agreement to January 1, 2012.

It is plain from their immediate context, though, that these clauses simply refer to the effective date of the Amendment itself--i.e., the date on which Tejas's "rights, duties and

18

obligations" under the Agreement would transfer to TSA--and do not alter the effective date of the underlying Employment Agreement.  The Amendment stresses that the Employment Agreement was intended to "remain in full force and effect in accordance with its terms," "[e]xcept as expressly modified by this Amendment."  When the Amendment "expressly modified" the terms of the Employment Agreement, it did so in clear, straightforward language, providing that (for example) "[e]ach reference to 'Tejas Silicon Inc.' in the Agreement shall be deleted in its entirety and be replaced by Telefunken Semiconductors America LLC."  Had the Amendment also altered the effective date of the Employment Agreement, one would expect it to have used a similarly clear, straightforward construction.  In the absence of such a construction, the effective date remained the same.

In sum, TSA's notice to Mason of its intention not to renew the Employment Agreement was not a termination "without Cause" within the meaning of Section 6(b) of that Agreement.  Mason is not entitled to severance pay under the Agreement as a result of that notice.  The notice did, however, serve to terminate TSA's obligations to Mason under the Agreement, so that Mason's employment with TSA subsequent to the Agreement's expiration on April 1, 2012 was on an at-will basis, as defined by TSA's December 2011 offer letter and the Employment, Confidential Information and Invention Assignment Agreement between Mason and

19

TSA.  When TSA later released Mason as part of a reduction in force in May 2012, then, it was no longer bound by the Employment Agreement, and thus under no obligation to pay Mason the severance pay outlined in that agreement.[7]

## IV.  Conclusion

For the reasons set forth above, TSA's motion for summary judgment[8] is GRANTED, and Mason's motion for partial summary judgment[9] is DENIED.  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated:  August 13, 2014

_____

[7]As a final aside, the court notes that TSA's motion for summary judgment treats the notion that TSA has failed to grant Mason stock options provided for in the Employment Agreement as a claim that is separate and different from Mason's claim that he is entitled to severance pay.  Although he has moved for summary judgment on liability, Mason himself does not address his claim for stock options in his memorandum.  In his objection to TSA's motion, Mason asserts that his entitlement to stock options is an issue related to damages, not liability.  The court therefore considers the issue of Mason's entitlement to stock options to be subsumed within his entitlement to severance pay under Section 6(b) of the Employment Agreement, and does not address that issue separately.

[8]Document no. 38.

[9]Document no. 39.

```
cc:  Anne M. Rice, Esq.
     Mark Christopher Peters, Esq.
     Irvin D. Gordon, Esq.
```